UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ISABEL FLORES,<br><br>Plaintiff<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 5:15-cv-1639 (GJS)<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

This social security benefits case presents a narrow question: Does the record support the administrative law judge's ("ALJ's") conclusion that Flores could perform a job that requires math level 2? The Court concludes "yes," and so the Commissioner's determination is affirmed.

## PROCEDURAL HISTORY

On January 6, 2012, Flores filed applications seeking disability insurance and supplemental security income benefits based on an alleged onset of disability on November 16, 2010 caused by her work-related back injury. [Admin. Rec. ("AR") 190-96, 197-204; *see* AR 111.] The Commissioner denied the claims on initial review and upon reconsideration. [AR 111-14, 116-20.] On August 9, 2013, ALJ Tamara Turner-Jones held a hearing, at which Flores, her attorney, vocational expert

Corinne Porter, and an interpreter were present. [AR 33.] During the hearing, Flores acknowledged that she spoke "[a] little" English and that an interpreter was present to assist if necessary. [AR 35.] The transcript reflects that Flores spoke in English during parts of the hearing, and through the translator at other times. [*See, e.g.*, AR 44-51, 55-56, 60-63 (reflecting frequent switching between languages).]

On November 27, 2013, the ALJ issued a decision finding Flores not to be disabled. [AR 11-32.] Flores sought review in the Appeals Council, which denied her request on June 12, 2015. [AR 1-6.] Accordingly, the ALJ's decision became the final Social Security Administration decision. This appeal followed.

## ADMINISTRATIVE PROCEEDINGS

### I. The ALJ's Decision

Because only Step 5 is at issue, the Court summarizes only the ALJ's opinion related to whether other work exists in the national economy that Flores can perform.[1] Based on the medical evidence and other testimony, the ALJ defined Flores's residual functional capacity ("RFC") as follows:

> [She can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk six hours out of an

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

2

> eight-hour workday with regular breaks. She can sit for six hours out of an eight-hour workday with regular breaks. She requires the option to alternate positions between sitting and standing at 30 minute intervals for one to five minutes at the workstation. She can occasionally kneel, stoop, crawl, crouch, and climb ramps and stairs. She is precluded from climbing ladders, ropes, or scaffolds. She can frequently use upper extremities for fine and gross manipulation. She can occasionally reach overhead (above shoulder level). She can occasionally use the upper and lower extremities for forceful pushing and pulling within the weight restrictions noted above. She is precluded from exposure to unprotected heights and dangerous moving machinery. She is precluded from concentrated exposure to extremely cold or hot temperatures. She can make simple work related decisions. She can sustain concentration and attention, persistence and pace in two-hour blocks of time. She can perform unskilled work. She can respond and interact appropriately to coworkers, supervisors, and the general public.

[AR 20-21.] After concluding that Flores could not perform any past relevant work [AR 26], the ALJ found that Flores was a younger individual on the alleged disability date, and has a marginal education and is able to communicate in English [AR 27]. Taking into account these factors, Flores's RFC, and vocational expert testimony that the ALJ found consistent with the Dictionary of Occupational Titles ("DOT"), the ALJ determined that Flores could perform the following positions:

> 1. Garment sorter, DOT 222.687-014, is a light, unskilled (SVP 2) occupation, with 20,000 such positions in the national economy; and
>
> 2. Production solderer, DOT 813.684-022, is a light unskilled (SVP 2) occupation, with over 30,000 such positions in the national economy.

[*Id.*]

## II. Vocational Expert Testimony

Corrines Porter testified as the vocational expert, without objection to her qualifications by Flores. Porter described the past jobs held by Flores. [AR 67.] The ALJ then asked Porter the following hypothetical:

> Assume the existence of an individual who was 46 years old as of the alleged onset date, has a sixth grade education, and a work history as a warehouse worker, a marker, and a screw-machine tender. Further assume that such individual can lift 20 pounds occasionally, 10 pounds frequently; would be able to sit six hours out of an eight-hour day with customary breaks, stand and walk six hours out of an eight-hour day with customary breaks; would be able to occasionally kneel, stoop, crawl, and crouch; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds. But the individual would be able to frequently use the upper extremities for fine and gross manipulations, and that includes grasping and fingering; would be able to occasionally reach overhead, and that's above shoulder level; that the individual would be able to occasionally use the upper and lower extremities for forceful pushing and pulling within the weight restrictions noted above; that the individual would need to avoid exposure to unprotected heights and dangerous moving machinery. The individual would need to—would be able to—let me say that again would need to avoid concentrated exposure to extremely cold or hot temperatures; that the individual can make simple, work-related decisions; that the individual would be able to sustain concentration and attention, persistence and pace in at least two-hour—in two-hour blocks of time; that the individual would be able to perform unskilled work; that the individual would be able to respond appropriately to co-workers, supervisors, and the general public.

[AR 66-67.] Porter testified that a person with that RFC could not perform Flores's past work. [AR 67-68.] Moving to the Step Five analysis, Porter explained that a person with Flores's RFC could perform some light, unskilled work, namely the

representative positions of (1) cleaner (SVP 2, DOT 323.687-014, 120 jobs in the national economy), (2) bagger (SVP 1, DOT 920.687-018, 16,000 jobs in the national economy), and (3) garment sorter (SVP 2, DOT 222.687-014, 20,000 positions in the national economy). [AR 68.]

The ALJ then posed additional hypotheticals, of which only one is relevant here. It further limited the RFC to the ability to alternate between sitting and standing at 30-minute intervals, for one to five minutes, at the workstation. [*Id.*] Considering the additional limitation (which the ALJ ultimately adopted [*see* AR 20-21]), Porter testified that a person with the proposed RFC could not perform the positions of cleaner and bagger, but added the position of production solderer (SVP 2, DOT 813.684-022, more than 30,000 jobs in the national economy). [AR 68-69.] She also testified that a person with the proposed RFC could perform no other light work positions.

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

# DISCUSSION

## I. Substantial Evidence Supports the ALJ's Conclusion that a Person with Flores's RFC Could Perform Other Work Available in the National Economy.

Flores's attack on the ALJ's Step 5 analysis is twofold: that substantial evidence does not support the implicit conclusions that Flores can perform (1) work requiring language level 2, or (2) work requiring math level 2.

### A. Whether Flores can perform work requiring language level 2 is ultimately irrelevant because any such error is harmless.

At the outset, Flores argues a non-issue. The ALJ found that a person with Flores's RFC could perform two jobs—production solderer and garment sorter. [AR 27.] As Flores acknowledges, though production solderer requires language level 2, garment sorter requires only language level 1. [*See* Dkt. 16 ("Pl's Br.") at 7, 8 (citing DOT definitions).] Therefore, even if the determination that Flores could engage in work requiring language level 2 were erroneous (and the only error), the ALJ's identification of garment sorter would be sufficient to uphold the Commissioner's determination that Flores was not disabled. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055-56 (9th Cir. 2006)) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination[.]'"); *see, e.g.*, *Mitchell v. Colvin*, 584 Fed. App'x 309, 312 (9th Cir. 2014) (finding that erroneous identification of job constituted harmless error where ALJ identified another that existed in significant numbers); *Yelovich v. Colvin*, 532 Fed. App'x 700, 702 (9th Cir. 2013) (same).[2] Accordingly, the Court considers only

---

[2] Flores does not argue that the number of "garment sorter" positions alone would fail to meet the requirement of a significant number in the national economy. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding 25,000

6

whether the ALJ properly found that Flores could perform jobs requiring math level 2.

### B. The ALJ properly determined that Flores could perform a job requiring math level 2.

No one disputes that the ALJ correctly found Flores, a woman with a sixth grade education, to be of "marginal education" as defined by the Commissioner's regulations. [AR 27; Pl.'s Br. at 8; Dkt. 17 ("Def.'s Br.") at 3-4]; *see* 20 C.F.R. §§ 404.1564(b)(2); 416.964(b)(2). Flores argues that her marginal education is, without more, insufficient to support assuming that Flores can engage in math level 2 work because the definition of "marginal education" aligns with DOT level 1. And, Flores posits, as the record does not contain the "something more," the ALJ's opinion at Step Five lacks substantial evidence. The Commissioner argues that because "marginal education" means an "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs," 20 C.F.R. § 404.1564(b)(2), and the VE-identified jobs are simple, unskilled types of jobs, Flores must be able to perform them.

The Court adopts neither argument.[3] On the one hand, the Court agrees with Flores that it does not follow automatically from her marginal education that she could perform a job requiring math level 2. On the other hand, the Court agrees with the Commissioner that a finding of marginal education is consistent with math level 2. In other words, Flores's marginal education is part of the analysis, but the Court declines to hold that it, standing alone, is substantial evidence that Flores can

---

jobs in national economy to be a "close call" but sufficient).

[3] The Court believes this to be an issue of first impression, as the parties have not cited, and the Court has not found, a case determining that marginal education mandates a certain level of mathematic competence.

7

hold a math level 2 position.  Accordingly, the Court must review the record for facts that demonstrate Flores possesses the requisite mathematical ability.

The procedural errors by both Flores's administrative hearing counsel and the Commissioner frustrate that review and make rendering a decision on this issue difficult.  According to the Commissioner's own regulations, the Social Security Administration "will ask [the claimant] … whether [she can] … do at least simple calculations in arithmetic."  § 404.1564(b)(6).  The ALJ never asked Flores about her math abilities at the hearing.  But there is a good reason for that: Flores's counsel never raised the issue at the hearing before the ALJ.  Nor was it raised in the Appeal Council.  The Ninth Circuit and this Court do not look favorably on an attempt to remand a case for factual development that a claimant's attorney could have performed earlier.  *E.g.*, *Phillips v. Colvin*, 593 Fed. App'x 683, 684 (9th Cir. Feb. 13, 2015) ("This issue was waived by Phillips's failure to raise it at the administrative level when he was represented by counsel, and Phillips has not demonstrated manifest injustice excusing the failure."); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999) ("[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.").

Reviewing the record as a whole, substantial evidence supports the ALJ's implicit conclusion that Flores can perform math level 2 work.  First, and perhaps most compelling, Flores previously performed a job that, according to the DOT, required math level 2.  The ALJ found that Flores had "past relevant work as a warehouse worker, marker, and machine tender."  [AR 26.]  Machine tender requires level 2 math skills, and Flores performed it for about eight years.  DOT 604.685-034, 1991 WL 684812; [AR 243, 253, 294.]  Flores identifies no mental or physical condition that diminishs her math aptitude from her previous experience.  Also, the vocational expert knew of this history and Flores's sixth grade education

1  when responding to the ALJ's hypotheticals in providing the list of jobs Flores
2  could perform.  [*See, e.g.*, AR 66-67.]
3       Second, although not determinative for the reasons stated above, Flores's sixth
4  grade level education facially appears consistent with the work required.  Math level
5  2 requires the ability to "[a]dd, substract, multiply, and divide all units of measure[,]
6  [p]erform the four operations with like common and decimal fractions[,] [c]ompute
7  ratio, rate, and percent[,] [d]raw and interpret bar graphs[, and] [p]erform arithmetic
8  operations involving all American monetary units[.]"  *E.g.*, DOT 222.687-014, 1991
9  WL 672131.  Although the Court is not a vocational expert or a schoolteacher, the
10 Court can apply its commonsense to know that elementary school students are
11 taught these mathematical tasks.  For the two jobs the vocational expert identified,
12 the mathematical skill level required is extremely forgiving.  DOT 222.687-014,
13 1991 WL 672131 (Numerical Aptitude: Level 5 - Bottom 10% of the Population.
14 Markedly Low Aptitude Ability); DOT 813.684-022, 1991 WL 681592 ("Numerical
15 Aptitude: Level 4 - Lowest 1/3 Excluding Bottom 10%.  Low Degree of Aptitude
16 Ability.).
17      Finally, although of limited value, the ALJ's conclusions about Flores's daily
18 activities (which Flores does not challenge as unsupported) further demonstrate at
19 least a limited range of mathematical operation.  Based on Flores's own testimony,
20 the ALJ found Flores could shop for groceries—a task which requires at least
21 minimal math skills.  [AR 22, 39, 49.]
22      Though it would have been preferable to have a more fully developed record of
23 Flores's math abilities and a more specific finding in the ALJ's opinion, the Court
24 does not fault the ALJ for not probing more deeply.  Even now, Flores points to no
25 evidence—in the record or otherwise—showing that she could not perform at math
26 level 2.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir.
27 2015) (requiring the Court to "consider the evidence as a whole, weighing both the
28 evidence that supports and the evidence that detracts from the Commissioner's

conclusion." (quoting *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996))). Instead, she tries to capitalize on a dearth of more specific findings about her math ability caused by her own counsel's failure to raise the issues appropriately at the hearing. In any event, even without more specific findings, the record discloses substantial evidence supporting a conclusion that *Flores* (not just any person with her RFC) could perform work at a math level 2.[4]

## II. Flores Is Not Entitled to Remand Based on the ALJ's Failure to Ask the Vocational Expert Whether Her Testimony is Consistent with the DOT.

Tangentially in her opening brief and more explicitly in her reply brief, Flores complains that the "ALJ did not ask if the testimony provided was consistent with the DOT and its companion publications." [*E.g.*, Pl.'s Br. at 9.] The Court is not sure whether Flores intended to raise that argument as a separate, reversible error. In the event she did, the Court rejects it now.

The Ninth Circuit has held that, "in light of the requirements of SSR 00-4p, an ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the *Dictionary of Occupational Titles.*" *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see* Soc. Sec. R. ("SSR") 00-4p (explaining that "[w]hen a [vocational expert] … provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] … evidence and information provided in the

---

[4] Even if the ALJ did err, the Court would conclude that the error was harmless. "Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011). In light of the total absence of evidence to support a finding that Flores could not perform math level 2 work, the Court has no reason to believe that a remand would be anything more than an exercise in futility.

10

[*Dictionary of Occupational Titles* ]."). It takes only a cursory review of the transcript to determine that the ALJ did not ask the magic question.

This mistake does not necessarily entitle Flores to benefits, or even a remand. Instead, this Court looks to see whether the error was harmless. *Molina*, 674 F.3d at 1115 ("We have long recognized that harmless error principles apply in the Social Security Act context"). In this context, that means asking whether a reasonable ALJ could find the VE's conclusion—that a person with Flores's RFC could perform the positions of garment sorter and/or production solderer—inconsistent with the DOT. Where "there is no evidence that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ('DOT')," "the ALJ's failure to ask whether the VE's testimony was consistent with the DOT [is] harmless." *Perea v. Comm'r of Soc. Sec.*, 574 Fed. App'x 771, 771-72 (9th Cir. 2014); *see Massachi*, 486 F.3d at 1154 n.19 ("This procedural error could have been harmless, were there no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts[.]").

Flores identifies no inconsistencies, apart from the math and language level issues the Court already addressed in Part I. As the Court explained above, a marginal education does not conflict with performing at math level 2; it simply does not demand it either. And, unlike *Zavalin v. Colvin*, 778 F.3d 842 (Feb. 20, 2015) cited by Flores, nothing in the RFC conflicts with a finding of math level 2. The Court does not conceive of how the procedural failure to ask the VE whether her testimony was inconsistent with the DOT otherwise prejudiced Flores. Therefore, under *Massachi*, this error cannot provide the basis for remand. 486 F.3d at 1154 n.19.

//
//
//
//

**CONCLUSION**

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is AFFIRMED and this action is DISMISSED WITH PREJUDICE; and

(2) Judgment be entered in favor of the Commissioner.

**IT IS HEREBY ORDERED.**

DATED: March 22, 2016 _____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE